PRESTIGE FURNITURE CORPORATION, PLAINTIFF v. KING-HUNTER, INC., DEFENDANT AND THIRD-PARTY PLAINTIFF v. STROUP SHEET METAL WORKS, INC., THIRD-PARTY DEFENDANT AND FOURTH-PARTY PLAINTIFF v. LLOYD A. FRY ROOFING COMPANY, FOURTH-PARTY DEFENDANT

No. 7418SC524

(Filed 18 September 1974)

Sales § 22— action based on defective materials — summary judgment

In a subcontractor's fourth-party action against the manufacturer of roofing materials to recover damages resulting from the defective condition of a roof installed by plaintiff, defendant manufacturer's motion for summary judgment was properly allowed where the pleadings alleged and the evidence tended to establish that the roof failure

was due either to faulty design in the drainage system or to failure on plaintiff's part to install the roof in accordance with defendant's specifications, and where a bond executed by defendant obligated defendant to repair only damage caused by ordinary wear and tear of the elements.

APPEAL by Stroup Sheet Metal Works, Inc., from judgment of *Kivett, Judge,* 4 February 1974 Civil Session of Superior Court held in GUILFORD County.

On 1 April 1966 Prestige Furniture Company contracted with King-Hunter, Inc., a general contractor, for King-Hunter to construct a building for Prestige in accordance with plans and specifications which had been prepared by an architect selected by Prestige. On 5 April 1966 King-Hunter subcontracted with Stroup Sheet Metal Works, Inc. for Stroup to furnish all labor, material and equipment necessary for installation of the roof on the building in accordance with the applicable plans and specifications. In this connection, all parties agreed that Lloyd A. Fry Roofing Company GC-B-20 roofing material and specifications would conform to the architect's specifications for the roof.

The built-up roof was applied to the building by Stroup during August and September 1966, Stroup using for that purpose Fry roofing materials, and the roof was completed by Stroup on 6 September 1966. On 12 October 1966 Fry issued to Prestige its twenty-year bond in the amount of $17,700.00 by which Fry guaranteed to Prestige, subject to certain conditions, that Fry would make at its expense, not exceeding in the aggregate the face amount of the bond, "any repairs or damage caused by ordinary wear and tear by the elements, that may become necessary to maintain said Fry guaranty Type Built-Up Roof (exclusive of flashing, metal work and insulating material) in a water-tight condition." Prior to issuing this bond, Fry obtained from Stroup an instrument dated 21 September 1966 by which Stroup certified to Fry that Stroup had completed the roof in accordance with Fry's specifications. By this instrument Stroup also agreed, in consideration of Fry furnishing the bond, that in event Fry should be called upon to make any repairs to the roof within a period of two years from date of completion, Stroup would, at its expense, "make all necessary repairs if repairs are required, cut and repair any blisters or buckles and if the trouble is not due to defects in the Fry materials applied on said roof, [Stroup] at its own expense will

---

---

do all things necessary to repair any defects to the satisfaction of the owner." The roof leaked, and during 1968 and 1969 Stroup did make numerous repairs, despite which the roof continued to leak.

On 9 September 1969 Prestige brought this lawsuit against the general contractor, King-Hunter, alleging that in the installation of the roof the Fry specifications GC-B-20 were not complied with and for that reason it would be necessary, in order to correct the defective condition of the roof, to remove all of the roofing material and to replace it with new material at a cost of at least $40,000.00. Prestige sought to recover damages in that amount (later by amendment increased to $49,408.00) from King-Hunter. King-Hunter filed answer, alleging that the roof had been completed in substantial accordance with the contract specifications and that any defects in the roof were caused by defects in the architectual plans. As part of its answer, King-Hunter filed a third-party complaint against Stroup alleging that if Prestige was entitled to recover anything against King-Hunter, then Stroup should be liable over to King-Hunter for the amount of such recovery. Stroup in turn filed answer to the third-party complaint of King-Hunter, alleging that upon completion of the roof the same had been inspected and accepted by the architect as agent for Prestige and that by accepting the guaranty bond from Fry, Prestige agreed that it looked to Fry to repair defects in the roof and thereby discharged Stroup from further responsibility. As part of its answer, Stroup asked that Fry be made a party and alleged that Fry's agents had also inspected the roof, that after such inspection Fry had issued the bond, and if Prestige should recover against King-Hunter and if King-Hunter should recover against Stroup, Fry should be held liable over to Stroup for the amount of such recovery. Fry answered Stroup's claim, denying that its guaranty bond was issued as a result of any inspection by its agents and alleging that the bond was issued solely upon representation of Stroup that the roof had been applied strictly in accordance with specifications. As further defenses, Fry alleged that damages specified in Prestige's complaint arose from causes other than ordinary wear and tear by the elements to which Fry's liability was restricted by the bond, that conditions of liability contained in the bond had not been complied with, that Stroup had failed to comply with the Fry specifications in installing the roof, and that the damages specified in Prestige's complaint

were substantially caused by inadequate design of the roofing and drainage system for which Fry was in no way responsible.

While this action was pending and in the summer of 1970 the roof installed by Stroup was removed by Prestige and replaced by a new roof at a cost to Prestige of $49,408.00. Upon motion by Fry, Stroup's action against Fry was severed from the remainder of the case until the issues raised among the original three parties should be resolved. The issues as to the original three parties came on for trial at the 19 April 1971 session of Superior Court in Guilford County, resulting in a jury verdict finding in favor of Prestige and awarding Prestige damages against King-Hunter in the amount of $45,500.00, and awarding King-Hunter damages in the same amount against Stroup. The court in its discretion set aside the verdict. Thereafter, Prestige, King-Hunter and Stroup reached an agreement of settlement and Prestige and King-Hunter, by instrument dated 30 June 1972, assigned all of their rights, title and interest in the litigation to Stroup.

On 8 August 1973 Fry, the fourth-party defendant, filed motion for summary judgment dismissing Stroup's action against Fry on the ground that there was no genuine issue as to any material fact and that Fry was entitled to judgment as a matter of law. In support of this motion, Fry filed a transcript of the testimony and evidence presented at the trial which had taken place on the issues among the three original parties at the 19 April 1971 session of Superior Court together with certain other documents, the authenticity of which had been admitted by Stroup. The court allowed Fry's motion for summary judgment, and Stroup appealed.

*Alspaugh, Rivenbark & Lively by James B. Rivenbark for Stroup Sheet Metal Works, Inc., appellant.*

*Smith, Moore, Smith, Schell & Hunter by David M. Moore II for Lloyd A. Fry Roofing Company, appellee.*

PARKER, Judge.

The motion for summary judgment was properly allowed. Nowhere in any of the voluminous pleadings in this case has any party alleged that the failure of the roof was in any way due to any defect in the materials manufactured by Fry or in Fry's specifications for installing those materials. Indeed, insofar

as allegations in the pleadings are concerned, failure of the roof was due either to faulty design in the drainage system or to failure on the part of Stroup to install the roof in accordance with the applicable Fry specifications. All of the testimony and evidence which was presented at the trial which took place among the three original parties was directed to establish one or the other of those causes for failure of the roof, for neither of which was Fry in any way responsible. No genuine issue has been presented that the roof failure was in any way caused by defect in the Fry materials or in its specifications for application of those materials.

This leaves as the only ground upon which Stroup seeks to rest its claim for recovery against Fry the execution and delivery by Fry to Prestige of the twenty-year bond. By its terms, this bond runs only in favor of Prestige and not to any other party. Thus, any right which Stroup may have under this bond could only be such as Stroup may have obtained from Prestige by virtue of the written instrument dated 30 June 1972 by which Prestige assigned to Stroup all of its rights, title and interest in this civil action. It should be noted that in this action Prestige asserted no rights as against Fry, either under the bond or otherwise, and it is questionable whether any rights under the bond were transferred to Stroup. However that may be, and even if it be conceded that Stroup as assignee of Prestige has such rights against Fry as Prestige may have had under the bond, summary judgment dismissing Stroup's action was still proper. By the terms of the bond Fry obligated itself to repair only damage "caused by ordinary wear and tear by the elements," and no genuine issue has been raised that the damages were due to the causes referred to in the bond.

The judgment appealed from is

Affirmed.

Judges CAMPBELL and VAUGHN concur.